UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIMBERLY BENNETT,

    Plaintiff,

v.

THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA,

    Defendant,

and

JAMES A. BENNETT,

    Third-party Defendant.
_____/

Case No. 23-11070
Hon. Jonathan J.C. Grey

**<u>OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO ENFORCE SETTLEMENT AND FOR ATTORNEY'S FEES (ECF No. 36) AND GRANTING MOTION FOR ATTORNEY'S FEES BY LIEN HOLDER (ECF No. 39)</u>**

This action involves a dispute over the proceeds of a $70,000 Employee Retirement Income Security Act ("ERISA") life insurance policy on Kennedy James Bennett (the "Decedent"). The claimants to the benefit are James A. Bennett ("Mr. Bennett"), who is the Decedent's father, and Kimberly Bennett ("Ms. Bennett"), who is the Decedent's mother. Mr. Bennett and Ms. Bennett are divorced.

This matter is before the Court on Mr. Bennett's motion to enforce the settlement agreement reached on January 24, 2024. (ECF No. 36.) The motion also seeks attorney's fees as authorized by ERISA under 29 U.S.C. §1132(g) for the time and effort spent by the Federal Pro Se Legal Assistance Clinic (the "Clinic") to enforce the settlement agreement. (*Id.*) Also before the Court is a motion to enforce an attorney lien filed by Ms. Bennett's former counsel, the Law Office of Rabih Hamawi, P.C. (ECF No. 39.) For the reasons that follow, the Court **GRANTS** both motions.

I. **BACKGROUND**

Mr. Bennett seeks an order that enforces the parties' settlement, reached at the January 24, 2024 settlement conference conducted by United States Magistrate Judge Kimberly G. Altman, confirmed by subsequent emails among and between the parties' counsel, and as documented by the final settlement agreement. (*See* January 24, 2024 Text-Only Order; ECF Nos. 36-2, 36-3; ECF No. 40-1, PageID.588.)

It is undisputed that the settlement reached on January 24, 2024 included the following terms: (1) 35% of the proceeds plus 35% of any accrued interest would be paid to Ms. Bennett; (2) 65% of the proceeds plus 65% of any accrued interest would be paid to Mr. Bennett; and (3)

2

the parties would sign a full release and discharge of Defendant Prudential Insurance Company of America ("Prudential") upon payment of the proceeds and mutual release of each other by Ms. Bennett and Mr. Bennett (the "Settlement").[1]

Ms. Bennett initialed a paper agreeing to the percentage distribution outlined above at the settlement conference. (*See* ECF No. 40-1, PageID.588.) After the settlement conference, Rabih Hamawi ("Mr. Hamawi") sent an email confirming the above settlement terms. (ECF No. 36-2, PageID.329–330.) Ms. Bennett subsequently refused to sign the final settlement agreement because of alleged inaccuracies in the final draft of the settlement agreement. (ECF No. 40, PageID.449.) Although it is not entirely clear what Ms. Bennett specifically objects to, the inaccuracies do not appear to involve the above percentages or the releases. (*See* ECF No. 40, PageID.445–452.) At a status conference on September 17, 2024, Ms. Bennett did not deny that she had agreed to the settlement; rather, she expressed dissatisfaction with Mr. Hamawi's

---

[1] It is also undisputed that there is no accrued interest, so the total proceeds at issue are $70,000.00. (ECF No. 36, PageID.317 n.2.)

3

performance and in her view, failure to vindicate her concerns regarding insurance beneficiary designation and changes.

The Court has carefully reviewed Ms. Bennett's response and the supporting documentation submitted, totaling over 170 pages. However, Ms. Bennett does not respond to Hamawi's motion to enforce its attorney lien or the Clinic's motion for attorney's fees. She also does not identify any fraud or mutual mistake in the settlement negotiation process.

Instead, Ms. Bennett reiterated her concerns about the discovery process and information exchanged with her prior counsel, Mr. Hamawi, during discovery and the mediation. (ECF No. 40.) In her response to Mr. Bennett's motion, Ms. Bennett extensively documents her concerns with Mr. Hamawi's representation and the change in beneficiary. However, Ms. Bennett does acknowledge that she initialed a paper agreeing to the distribution of the proceeds as outlined above. (ECF No. 40, PageID.449.) The Court sympathizes with Ms. Bennett who has endured a great tragedy and is mourning the loss of her beloved son. However, the Court does not have a basis to thwart the agreed settlement.

4

## II. LEGAL STANDARD

The Sixth Circuit has long recognized the broad, inherent authority and equitable power of a district court to enforce an agreement in settlement of litigation pending before it. *RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 646 (6th Cir. 2001); *Therma-Scan, Inc. v. Thermoscan, Inc.*, 217 F.3d 414, 419 (6th Cir. 2000). Before entry of judgment or dismissal in a case, no separate basis for jurisdiction is required for the court to enforce the settlement agreement. *Jaynes v. Austin*, 20 F. App'x 421, 423 (6th Cir. 2001) (citing *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1371 (6th Cir. 1976)).

Courts may enforce a settlement agreement "even where the agreement has not been arrived at in the presence of the court nor reduced to writing." *Kukla v. Nat'l Distillers Prods. Co.*, 483 F.2d 619, 621 (6th Cir. 1973); *RE/MAX Int'l, Inc.*, 271 F.3d at 646 ("The existence of a valid agreement is not diminished by the fact that the parties have yet to memorialize the agreement.").

Nevertheless, "[b]efore enforcing settlement, the district court must conclude that agreement has been reached on all material terms. The court must enforce the settlement as agreed to by the parties and is not

permitted to alter the terms of the agreement." *Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988) (internal citations omitted). Although ordinarily an evidentiary hearing is required, no evidentiary hearing is necessary where "no substantial dispute exists regarding the entry into and terms of an agreement." *RE/MAX Int'l, Inc.*, 271 F.3d at 646 (citation omitted).

Questions regarding the formation and enforceability of settlement agreements are governed by state contract law. *Universal Settlements Int'l, Inc. v. Nat'l Viatical, Inc.*, 568 F. App'x 398, 401 n. 2 (6th Cir. 2014) (citation omitted). In Michigan, "[b]efore a contract can be completed, there must be an offer and acceptance. Unless an acceptance is unambiguous and in strict conformance with the offer, no contract is formed. Further, a contract requires mutual assent or a meeting of the minds on all the essential terms." *Kloian v. Domino's Pizza, LLC*, 733 N.W.2d 766, 770 (Mich. Ct. App. 2006) (internal citations and quotation marks omitted). It is well settled that when a party's attorney accepts the essential terms of a settlement, those terms are enforceable against the agreeing party. *Id.* at 772.

"As a general rule, settlement agreements are 'final and cannot be modified.'" *Clark v. Al-Amin*, 872 N.W.2d 730, 736 (Mich. Ct. App. 2015) (quoting *Smith v. Smith*, 823 N.W.2d 114, 116 (Mich. Ct. App. 2011)). Thus, "a party cannot void a settlement agreement merely because he has had a change of heart, nor can he do so merely because his assessment of the consequences of the settlement was incorrect." *Id.* (cleaned up).

### III. ANALYSIS

#### A. Enforceable Settlement Agreement

The Court finds that there was a valid and enforceable settlement agreement reached on January 24, 2024. The parties agreed to all essential terms, specifically, the distribution of the proceeds and general releases. *Therma-Scan*, 217 F.3d at 419; *Brock*, 841 F.2d at 154; *Graley v. Yellow Freight Sys., Inc.*, No. 98-4166, 2000 WL 799779, at *6 (6th Cir. June 14, 2000) ("When the parties have agreed on the essential terms of a settlement, and all that remains is to memorialize the agreement in writing, the parties are bound by the terms of the oral agreement.").

Ms. Bennett has provided no evidence or suggestion of fraud or mutual mistake. She admits that she agreed to and signed a settlement

7

under which she would receive 35% of the proceeds. (ECF No. 40, PageID.449.) After the settlement conference, all material terms were again confirmed in writing by Mr. Hamawi, who was Ms. Bennett's attorney at the time and whose agreement was binding on Ms. Bennett. (ECF No. 36-2, PageID.329.) Furthermore, the Clinic offered to have Ms. Bennett review any and all documentation in the Clinic's possession in order to help assuage her concerns about discovery, an offer which Ms. Bennett did not accept. (ECF No. 41, PageID.622 n.2.)

The circumstances of this case are almost identical to *Kloian*, where the court found a settlement agreement enforceable when the party's attorney agreed to a settlement via email and the email listed the distribution of funds and terms of a general release. 733 N.W.2d at 771. For the foregoing reasons, the Court finds that the settlement agreement is valid and enforceable.

### B. Attorney's Fees

In an ERISA action by a plan beneficiary, the Court "in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. §1132(g)(1). The Sixth Circuit has outlined a five-factor test which guides the Court's analysis:

>(1) the degree of the opposing party's culpability or bad faith;
>(2) the opposing party's ability to satisfy an award of attorney's fees;
>(3) the deterrent effect of an award on other persons under similar circumstances;
>(4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and
>(5) the relative merits of the parties' positions.

*First Tr. Corp. v. Bryant*, 410 F.3d 842, 851 (6th Cir. 2005) (quoting *Foltice v. Guardsman Prods., Inc.*, 98 F.3d 933, 936–937 (6th Cir. 1996)). (paragraph breaks added).

The Court finds that the first three factors weigh strongly in favor of grating the Clinic attorney's fees. First, Ms. Bennett has engaged in culpable conduct by refusing to abide by the terms of the Settlement despite the extensive efforts of her counsel and the Court. There is no evidence that Ms. Bennett has evidence to support the allegation that the Settlement was the product of fraud or mutual mistake. Second, Ms. Bennett will have sufficient funds to satisfy the award of attorney's fees as she will receive $24,500.00 under the Settlement.[2] Finally, granting the motion for attorney's fees will incentivize future litigants from

---

[2] Even accounting for the attorney lien discussed below, Ms. Bennett will still have sufficient funds to satisfy both the lien and the award of attorney's fees.

9

reneging on settlement agreements. The Court does not address the fourth factor as it is unclear that Mr. Bennett sought to confer a common benefit. However, the fifth factor also weighs in favor of the award of attorney's fees as the evidence as to the existence and validity of the Settlement is overwhelming.

Ms. Bennett does not respond to the Clinic's request for attorney's fees. Furthermore, although student attorneys worked on this case, the Clinic only seeks recovery for the time spent by Ms. Barbara A. Patek, an adjunct professor at the University of Detroit Mercy Law and the director of the Clinic. Ms. Patek has nearly forty years of experience handling complex litigation. (ECF No. 36-4, PageID.335.) The Clinic seeks an award of $5,684.00 in attorney fees, representing 16.24 hours of work by Ms. Patek at $350 per hour. (ECF No. 36, PageID.324.) Furthermore, the Clinic only seeks attorney's fees for work performed after Ms. Bennett refused to sign the settlement agreement. (ECF No. 36-5.)

The Court finds that given Ms. Patek's experience, the narrow tailoring of the fee request, and the average hourly rates for attorneys in this market as listed in the 2023 Economics of Law Report published by the State Bar of Michigan, the attorney's fees requested by the Clinic are

10

reasonable. (ECF No. 36-7.) Consequently, the Court **GRANTS** the Clinic's motion for attorney's fees in the amount of $5,684.00.

### C. The Law Office of Rabih Hamawi's Attorney Lien

Ms. Bennett initially retained Mr. Hamawi to represent her in this matter under a contingency fee agreement, the validity of which Ms. Bennett has not challenged. (ECF No. 39-2.) It is undisputed that the contingency fee agreement provided that Mr. Hamawi would be paid 33.33% of Ms. Bennett's entire gross recovery and would be reimbursed for all relevant fees. (ECF No. 39-2, PageID.388.)

Mr. Hamawi represented Ms. Bennett throughout this action, including at the January 24, 2024 settlement conference and through significant discovery, until he filed a motion to withdraw in May 2024 due to a breakdown in the attorney-client relationship. (ECF No. 31.) The Court subsequently granted the motion and Ms. Bennett has since proceeded pro se. Mr. Hamawi now seeks to enforce his attorney's lien.

Ms. Bennett is a Michigan resident, and Mr. Hamawi is an attorney licensed to practice in Michigan. Under Federal Rule of Civil Procedure 69(a)(1), Michigan law is controlling with respect to a claim of lien. *Soto v. Airborne Express, Inc.*, 2009 WL 3388898 at *1 (E.D. Mich. Oct. 16,

11

2009). Under Michigan law, an attorney retained on a contingent fee arrangement who withdraws from a case with good cause is entitled to compensation for the reasonable value of his services based on quantum meruit, and not the contingent fee contract. *Morris v. Detroit*, 472 N.W.2d 43, 47 (Mich. Ct. App. 1991); *Ecclestone v. Ogne*, 441 N.W.2d 7, 8 (Mich. Ct. App. 1989).

The nonexclusive factors this Court must consider in determining the reasonableness of a fee request include:

>   (1) the experience, reputation, and ability of the lawyer or lawyers performing the services,
>   (2) the difficulty of the case, i.e., the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly,
>   (3) the amount in question and the results obtained,
>   (4) the expenses incurred,
>   (5) the nature and length of the professional relationship with the client,
>   (6) the likelihood, if apparent to the client, that acceptance of the particular employment will preclude other employment by the lawyer,
>   (7) the time limitations imposed by the client or by the circumstances, and
>   (8) whether the fee is fixed or contingent.

*Pirgu v. United Servs. Auto. Ass'n*, 884 N.W.2d 257, 282 (Mich. 2016).

The Court must begin the analysis "'by determining the fee customarily charged in the locality for similar legal services' and then

multiplying that number 'by the reasonable number of hours expended in the case.'" *Id.* at 275 (citing *Smith v. Khouri*, 751 N.W.2d 472, 475 (Mich. 2008)). In determining the fee customarily charged in the locality for similar legal services, Michigan trial courts routinely rely on data contained in surveys such as the Economics of the Law Practice Surveys that are published by the State Bar of Michigan, which the Court considers here. (ECF No. 39-3, PageID.442; ECF No. 36-7.)

In this jurisdiction, plaintiff's insurance law attorneys charge between $350–700 an hour. (ECF No. 39-3, PageID.444.) The median hourly rate for attorneys with 11 to 15 years in practice is $305 per hour, the mean is $330 per hour and the 95th percentile is $575 per hour. (ECF No. 36-7, PageID.348.) Mr. Hamawi has 14 years of experience in insurance-related matters and has published extensively on issues in insurance law. (ECF No. 39-3, PageID.397, 400.) Mr. Hamawi requests an hourly rate of $700.00, however the Court finds that $575.00 would be a reasonable hourly rate comparing the hourly rates for plaintiff's-side insurance lawyers with the rates for attorneys with 11 to 15 years of experience. (ECF No. 36-7.)

13

Mr. Hamawi spent 53.9 hours working on this case and having reviewed Mr. Hamawi's time records, the Court finds this to be a generally reasonable number of hours, if somewhat elevated due to the amount of time spent on withdrawal. (ECF No. 39-3, PageID.397.) Consequently, calculated on an hourly basis, Mr. Hamawi would be entitled to a fee of $31,567.50. However, Mr. Hamawi only seeks recovery for the amount he would be entitled to under the contingency fee agreement. (ECF No. 39, PageID.384.)

Under the Settlement Agreement, which the Court has found enforceable, Ms. Bennett is entitled to a total of $24,500.00. 33.33% of Ms. Bennett's recovery is $8,165.85,[3] which is the amount Mr. Hamawi seeks in attorney's fees. (ECF No. 39.) Mr. Hamawi also seeks to recover $2,686.16 in costs incurred, for a total of $10,852.01. (*Id.*) An attorney's fee of $8,165.85 divided by the 53.9 hours worked, would result in an hourly rate for Mr. Hamawi of approximately $151.50. This is lower than the lowest 25th percentile of hourly rates charged by plaintiff's insurance lawyers this jurisdiction. (ECF No. 39-3, PageID.444.)

---

[3] Although Mr. Hamawi calculated 33.33% of $24,500 as $8,166.67, the amount actually totals $8,165.85. (*See* ECF No. 39.) Therefore, the Court will use $8,165.85 in its calculations.

14

However, the Court finds that *Pirgu* factors one, two, six, and seven are either neutral or support a downward departure from the baseline figure. Mr. Hamawi's experience has already been factored into the fee. However, this case involved a relatively straightforward legal issue, this employment did not preclude other employment, and there was not a clear time limit imposed.

The Court carefully considers factor three, as Ms. Bennett has recovered a gross recovery of $24,500.00 and a $10,852.01 award would substantially diminish her recovery. The Court acknowledges that Ms. Bennett agreed to the contingency fee arrangement at the outset of the litigation and a fee of this percentage was contemplated. Further, Mr. Hamawi conducted substantial discovery and represented Ms. Bennett through the settlement process.

However, Ms. Bennett alleges she was dissatisfied with the representation prior to the settlement conference. (*See* ECF No. 40, PageID.448.) For those reasons, the Court finds that factor three does not support $10,852.01 award and justifies a variance. The Court finds that a combination of factors two, three, six, and seven justify a downward variance of 25%, or $2,041.46, given the moderate nature of the result

15

obtained and Ms. Bennett's total recovery. This would result in an attorney's fee of $6,124.39 in addition to $2,686.16 in costs incurred, for a total of $8,810.55.

Factor four also supports an attorney's fee of $6,124.39 and a total award of $8,810.55. Most significantly, the costs include an expert fee for the forensic analysis of Decedent's phone, filing fees, and fees for service of process. Having reviewed the supporting evidence for the costs incurred, the Court finds the forensic analysis costs to be slightly excessive when considering the needs of this case. (ECF No. 39-3, PageID.425–441.) Although it would be unreasonable under the circumstances to not compensate Mr. Hamawi for these costs, a total award of $8,810.55 will reimburse him in full for these costs, in addition to a reasonable attorney's fee.

Factor five also supports the $8,810.55 award as Mr. Hamawi represented Ms. Bennett for over a year, through the entire discovery process and the settlement conference. Finally, factor eight supports a $8,810.55 award as the parties agreed to a contingency fee arrangement at the outset of this case and a 25% discount is warranted given Mr. Hamawi's ultimate withdrawal and the result obtained.

16

Having considered all the *Pirgu* factors, the Court finds that Mr. Hamawi's request is generally reasonable. Accordingly, the Court **GRANTS** Mr. Hamawi's motion and **ENFORCES** the attorney's lien. The Court finds that Hamawi is entitled to $6,124.39 in attorney's fees and $2,686.16 in costs incurred, to be paid from Ms. Bennett's share of the insurance proceeds.

## IV.   CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendant's motion to enforce settlement terms (ECF No. 36) is **GRANTED**.

**IT IS FURTHER ORDERED** that Ms. Bennett **SHALL** execute the Settlement Agreement and the release provided by the defendant that comports with the settlement terms agreed to by the parties.

The parties are **FURTHER ORDERED** to provide to the Court a proposed stipulated order of dismissal with prejudice after the Settlement Agreement is executed no later than 30 days from the date of this Order.

**IT IS FURTHER ORDERED** that the Clinic's motion for attorney's fees (ECF No. 36) is **GRANTED** and the Court awards the

Clinic $5,684.00 in attorney's fees, to be subtracted from Ms. Bennett's settlement award.

**IT IS FURTHER ORDERED** that lien holder Law Office of Rabih Hamawi, P.C.'s motion to enforce an attorney lien and distribute attorney's fees and costs (ECF No. 39) is **GRANTED** and the Law Office of Rabih Hamawi, P.C. shall be awarded $6,124.39 in attorney's fees and $2,686.16 in costs incurred, to be subtracted from Ms. Bennett's settlement award.

**IT IS FURTHER ORDERED** that upon the execution of the Settlement Agreement, Prudential shall distribute the insurance proceeds as follows, pursuant to the Settlement Agreement and this Order:

- $5,684.00 to the Clinic
- $8,810.55 to the Law Office of Rabih Hamawi, P.C.
- $10,005.45 to Ms. Bennett
- $45,500.00 to Mr. Bennett

**SO ORDERED.**

Dated: August 26, 2025

**s/ Jonathan J.C. Grey**
JONATHAN J.C. GREY
UNITED STATES DISTRICT JUDGE

## Certificate of Service

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 26, 2025.

<u>**s/ S. Osorio**</u>
**Sandra Osorio**
**Case Manager**